IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIJAN S. SNYDERS, | : | CIVIL ACTION |
|     Petitioner | : | |
| v. | : | |
| | : | |
| NANCY GIROUX, et al | : | NO. 15-0521 |
|     Respondents. | : | |

## MEMORANDUM

Before me is Petitioner Rijan S. Snyders' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254. Snyder is currently incarcerated at the State Correctional Institute at Graterford. His petition raises four grounds of relief, all relating to the calculation of his parole eligibility in the state system.

## FACTUAL HISTORY

Snyders claims that his double jeopardy and due process rights under the Fifth Amendment were violated. *See* Doc. No. 1, at 5. It appears Synders argues that while at a halfway house, he was absent (for unknown reasons) and charged with escape. *Id.* He alleges that after he was charged with an escape attempt, he explained his position to the Philadelphia District Attorney's Office and the charges were dropped. *Id.* Petitioner argues that this situation has led to further confinement by the Pennsylvania Probation and Parole Board ("The Board"). *Id.* Second, Snyders claims that his rights under the Sixth Amendment, specifically a lack of "compulsory process," led to a violation of his Constitutional rights. *See id.* at 7. Snyders explains that he believes he was not given an "ascertainable reason" for his detainment after his alleged escape, and that this failure to get an explanation from the Board led to a violation of his Constitutional rights.

In ground three, Petitioner states that his writ of habeas corpus is "ripe" because of extraordinary circumstances and suppression of evidence. *See id.* at 8. Synders argues that the Board suppressed and withheld the reason "why" he was detained, and requests relief in the form of "comity" from the Parole Board. *Id.* Finally, Snyders alleges that supposed state discrepancies in criminal proceedings violated his rights under the Fourteenth Amendment. This, he argues, constitutes an abuse of power, presumably by the Parole Board, for not releasing important information to allow him to appeal a decision. *Id.* at 10.

The facts as I can construct them are as follows. Petitioner was scheduled for parole "on or after [March 1, 2013] to an approved plan *upon condition that there are no misconducts.*" *See id.* at 17 (emphasis added). However, the Board suspended this decision on January 4, 2013, following Snyders' escape attempt. *See id.* at 20. The Petitioner complained to the Board, writing that the Board "violated me [sic] for a charge that was dismissed." *Id.* at 24. This escape charge was nolle prossed by the Commonwealth on May 23, 2014 and Synders requested reinstatement to his "original status." *Id.*

The Board wrote back through counsel on December 9, 2014 that the Petitioner's new "maximum sentence" date was March 2, 2018. *See id.* at 28. The change in the minimum or maximum sentencing date, the Board wrote, is not something it has control over. In fact "[t]he Board only has control over the maximum sentence date if parole is revoked and that action results in a charge to the [maximum] date. The initial [maximum] date that you seek to challenge is the responsibility of the Department of Corrections and/or the sentencing court." *See id.* (citing *Gillespie v. Department of Corrections*, 527 A.2d 1061 (Pa. Commw. 1987)). The letter closes by stating that any

request for relief based upon changes in the calculation of sentencing does not fall within the purview of the Board. *Id.*

## DISCUSSION

The Commonwealth details why the petitioner is out of time to challenge his original firearms conviction and sentence.[1] While the Commonwealth surely is correct, Snyders does not actually attack his conviction or sentence, but complains of more recently occurring events that allegedly deprived him of proper parole calculations. Apropos of Snyders' actual claims, the Commonwealth writes that petitioner's escape and its effect on his parole status "certainly does not implicate petitioner's Constitutional rights, and it has no bearing on his petition's lateness." *See* Com. Resp. at 5 (citing to *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979), and adding the parenthetical explanation "(noting no federal Constitutional right to parole)"). This citation to *Greenholtz* is the only discussion the Commonwealth gives the matter. While my own research suggests to me that petitioner has not stated a basis for habeas relief, I am not sure how the Commonwealth sees the issue, and will ask for supplemental briefing to be sure that I understand the Commonwealth's position. I will also permit the petitioner to weigh in, if he chooses to do so.

There is more to the holding in *Greenholtz* than the Commonwealth's parenthetical synopsis suggests. As the Supreme Court explained in *Sandin v. Conner*, 515 U.S. 472 (1995), while *Greenholtz* held that there was no right to parole guaranteed

---

[1] Snyder's judgment of sentence on the firearms charges became final on July 15, 2010 – thirty days after the Pennsylvania Superior Court affirmed his judgment of sentence. The one-year habeas statute of limitations began running that day. Snyders never filed a PCRA petition and ran out of time to file that petition on July 16, 2011.

under the federal Constitution, *Greenholtz* also implicitly held that a state could create a right to parole by its own actions, and that such a state-created right could trigger federal due process protections. 515 U.S. at 481-82; *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 376 (1987) (Montana's parole statute, like Nebraska's in *Greenholtz,* created "a liberty interest in parole release").

The understanding in *Greenholtz* was made explicit in *Hewitt v. Helms*, 459 U.S. 460, 472 (1983), which held that Pennsylvania's "repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *See Sandin*, 515 U.S. at 481-82. If *Greenholtz, Helms*, and *Allen* provide the standard in this case, the question is whether the Commonwealth's parole process creates "a protected liberty interest." *Helms,* 459 U.S. at 472. The answer may be "no." Or the answer may be "yes," but the process afforded to Snyders before depriving him of that liberty interest was Constitutionally sufficient. *Id.* While *Greenholtz* supports a blanket claim that there is no right to parole guaranteed directly under the due process clause, I am not familiar enough with the Commonwealth's parole process to know whether a liberty interest was created in the first place, or whether, if created, it was taken away by a Constitutionally sufficient process. I need the Commonwealth to explain its position on these questions if I am to apply *Greenholtz,* as the Commonwealth suggests I should.

Whether *Greenholtz* even provides the correct standard in this case is subject to doubt. The Third Circuit explained in *Powell v. Weiss* that "[i]n *Sandin,* the Supreme Court clarified its standard for finding a state-created liberty interest, rejecting the 'case-by-case approach' espoused by *Greenholtz* and its progeny." 757 F.3d 338, 345 (3d Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995)). Under *Sandin* "a

4

prisoner is deprived of a state-created liberty interest if the deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* at 344 (quoting *Sandin*, 515 U.S. at 484). *Powell* involved the rescission of a prisoner's pre-release eligibility for housing at a community corrections center, based on a re-calculation of his eligibility without a hearing and without notice to the prisoner. 757 F.3d at 340. The Court of Appeals concluded that the standard in *Sandin*, not *Greenholtz*, applied, and decided that the loss of Powell's prerelease status was not an "atypical or significant hardship" for a convicted criminal that would create due process protection. *Id.* at 344. *Powell* may be inapplicable, in whole or in part: that case was not considering a habeas corpus petition, but an action brought under Section 1983. *See* 757 F.3d at 340.

    There remains the nettlesome fact that *Sandin* did not explicitly overrule *Greenholtz*, as the court noted in *Ellis v. D.C.*, 84 F.3d 1413, 1417-19 (D.C. Cir. 1996). In *Ellis*, the Court of Appeals for the District of Columbia held that because *Sandin* did not explicitly overrule *Greenholtz*, the standard in *Greenholtz* must be applied in parole cases. *Id.* The Commonwealth may argue that *Ellis* is unpersuasive because it was decided in the D.C. Circuit. If so, the question remains what to do with the fact that *Sandin* cast doubt on *Greenholtz*, but did not explicitly overrule it.

    *Sandin* may supply more of a reason to reject Snyders' position than *Greenholtz* did. *See Nelson v. Miranda*, CIV. A. 96-CV-2854, 1997 WL 327381, at *4-6 (E.D. Pa. May 6, 1997) (Pennsylvania law does not supply a legitimate expectation of a parole hearing, under either *Greenholtz* or *Sandin*). It seems likely that any habeas remedy Snyders might have that arises from his parole calculation—and I am not suggesting

that *Sandin* creates such a remedy—would be subject to an exhaustion requirement.[2] *See Smith v. Shannon*, CIV.A. 07-0361, 2007 WL 1411657, at *1 (E.D. Pa. May 10, 2007) (requiring exhaustion of alleged Bureau of Corrections calculation errors). While I may have to parse whether, under state law, petitioner's grievance is with the Board of Parole or the Bureau of Corrections, it would be helpful to know whether there is a state remedy available in either case, and if so, whether under federal law it must be exhausted, and whether exhaustion has occurred.

The due process clause does not authorize a federal court to "second-guess parole boards. . . ." *See Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001). A substantive due process violation "involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *See Hunterson v. DiSabato*, 308 F.3d 236, 247 (3d. Cir. 2002) (citations omitted). I would like to know whether *Hunterson* and *Coady* govern here, and if so, to see how the parties apply the standard in those two cases to the facts in this case, with due regard to *Greenholtz* and *Sandin*.

## CONCLUSION

Before making a recommendation to the district court, I prefer to have the Commonwealth provide an orderly analysis of what legal standard applies to petitioner's complaints about his parole status, and how the legal standard applies to the facts. The Commonwealth should discuss the questions that my own research has suggested,

---

[2] The Commonwealth points out that state remedies exist for computational errors by the Bureau of Corrections. Com. Resp. at 5 - 6, n.2. I assume that there is a state remedy for errors by the Parole Board, and that petitioner would be required to exhaust such a remedy before pursuing a federal habeas remedy for alleged Parole Board errors. The Commonwealth should address this point in supplemental briefing.

above, but should feel free to point me in a different direction if that is where the law leads. The Commonwealth should also address whether petitioner has met any exhaustion requirements. I will give the petitioner a chance to respond to the Commonwealth's supplemental brief.  I will direct supplemental briefing by separate order.[3]

                                   **BY THE COURT:**

                               *s/Richard A. Lloret*
                               RICHARD A. LLORET
                               U.S. Magistrate Judge

---

[3] I will give the Commonwealth 21 days to file a supplemental brief, and require the Petitioner to reply (if he sees the need) within 14 after the Commonwealth has served its supplemental brief. I am not inclined to grant an extension of these deadlines.